VENABLE LLP
Desirée F. Moore (*admitted pro hac vice*)
 *dmoore@venable.com*
227 W. Monroe Street, Suite 1900
Chicago, IL 60606
Telephone:   312.820.3400
Facsimile:   312.820.3401

VENABLE LLP
Joshua M. Rosenberg (SBN 274473)
 *jmrosenberg@venable.com*
Rachel C. Richards (SBN 329444)
 *rcrichards@venable.com*
Kaidyn P. McClure (SBN 352627)
 *kpmcclure@venable.com*
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone:   310.229.9900
Facsimile:   310.229.9901

*Attorneys for Defendants Terius Gesteelde-Diamant
and Contra Paris, LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHANAAZ MANGROE,<br><br>Plaintiff,<br><br>v.<br><br>TERIUS GESTEELDE-DIAMANT p/k/a "THE-DREAM"; CONTRA PARIS, LLC; and EPIC RECORDS,<br><br>Defendants. | Case No. 2:24-cv-04639-SPG-PVC<br><br>Hon. Sherilyn Peace Garnett<br>Courtroom 5C<br><br>**DEFENDANTS TERIUS GESTEELDE-DIAMANT AND CONTRA PARIS, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS AND TO STRIKE PLAINTIFF'S COMPLAINT**<br><br>[Filed Concurrently with (1) Declaration of Terius Gesteelde-Diamant; (2) Declaration of Desirée F. Moore; and (3) [Proposed] Order]<br><br>Date:        October 9, 2024<br>Time:        1:30 p.m.<br>Dept.:        Courtroom 5C<br><br>Trial Date:   Not Assigned |

*VENABLE LLP*
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

**TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 9, 2024 at 1:30 p.m. or as soon thereafter as the matter may be heard in Courtroom 5C of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, CA 90012, Defendants Terius Gesteelde-Diamant p/k/a "The-Dream" ("Diamant" or "Defendant Diamant") and Contra Paris, LLC ("CPL" or "Defendant CPL") (collectively, "Defendants") will and hereby do move the Court for an Order dismissing Plaintiff Chanaaz Mangroe's ("Plaintiff") claims against Defendants pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(2) and 12(b)(6) and to strike certain paragraphs of the Complaint pursuant to FRCP 12(f). Specifically, this Motion seeks the following relief:

1. Plaintiff's Complaint should be dismissed in its entirety given that it is an improper shotgun pleading.  *See* FRCP 12(b)(6).

2. Defendant CPL should be dismissed on the ground that this Court lacks personal jurisdiction over it.  *See* FRCP 12(b)(2).

3. Plaintiff's First Cause of Action for Sex Trafficking under 18 U.S.C. Section 1595 against Defendants should be dismissed with prejudice for failure to state a claim.  *See* FRCP 12(b)(6).

4. Plaintiff's Third Cause of Action for Rape under California Penal Code Section 261(4)(D) against Defendant Diamant should be dismissed with prejudice for failure to state a claim (*see* FRCP 12(b)(6)) or, alternatively, stricken in its entirety as an impermissibly redundant claim (*see* FRCP 12(f)).

5. Paragraphs 29-38 and 118 of the Complaint should be stricken because the allegations contained therein constitute impermissibly immaterial, impertinent, and scandalous material.  *See* FRCP 12(f).

   This Motion is made following counsel's August 8, 2024 meet and confer via videoconference, which was completed pursuant to Local Rule 7-3 and the

Honorable Sherilyn Peace Garnett's Standing Order for Civil Cases.  The Parties thoroughly discussed the substance and potential for resolution of this Motion and discharged the meet and confer requirement in good faith.  *See* Declaration of Desirée F. Moore ¶¶ 2-6.

The Motion is based on this Notice, the Memorandum of Points and Authorities attached hereto, the Declaration of Desirée F. Moore, the Declaration of Terius Gesteelde-Diamant, the complete Court files and records in this action, and all matters that may be properly considered by the Court at the hearing on this Motion.

Dated: August 16, 2024                    VENABLE LLP

                                    By    */s/ Desirée F. Moore*
                                          Desirée F. Moore
                                          Joshua M. Rosenberg
                                          Rachel C. Richards
                                          Kaidyn P. McClure

                                          *Attorneys for Defendants Terius*
                                          *Gesteelde-Diamant and Contra Paris, LLC*

# <u>TABLE OF CONTENTS</u>

<div align="right"><u>Page(s)</u></div>

I.     PRELIMINARY STATEMENT ................................................................ 1

II.    RELEVANT TIMELINE ..................................................................... 2

III.   THE COMPLAINT MUST BE DISMISSED BECAUSE IT IS AN IMPROPER SHOTGUN PLEADING AND DOES NOT COMPLY WITH RULE 8(A) ................................................................ 7

IV.   THIS COURT LACKS PERSONAL JURISDICTION OVER CPL ..................................................................................................... 9

     A.    This Court Lacks General Personal Jurisdiction Over CPL .................................................................................................... 9

     B.    This Court Lacks Specific Personal Jurisdiction Over CPL .................................................................................................. 10

V.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE TVPRA ........................................................................................... 12

     A.    The Complaint Fails to Allege Direct Perpetrator Liability Against Diamant Under 18 U.S.C. Section 1591(a)(1) .............................................................................. 13

     B.    The Complaint Fails to Allege Beneficiary Liability Against CPL Under 18 U.S.C. Section 1591(a)(2) ..................... 15

VI.   PLAINTIFF'S THIRD CAUSE OF ACTION FOR "RAPE" UNDER CALIFORNIA PENAL CODE SECTION 261(A)(4)(D) MUST BE DISMISSED ................................................. 18

VII.  IMPROPER MATERIAL IN PARAGRAPHS 29 THROUGH 38 AND PARAGRAPH 118 MUST BE STRICKEN FROM THE COMPLAINT ............................................................................... 21

VIII. CONCLUSION............................................................................... 23

<div align="left" style="writing-mode: vertical-lr"><b>Venable LLP</b><br/>2049 CENTURY PARK EAST, SUITE 2300<br/>LOS ANGELES, CA 90067<br/>310.229.9900</div>

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Athena Cosms., Inc. v. U.S. Warehouse*,
No. CV 19-8466-MWF (MRW), 2020 U.S. Dist. LEXIS 73797
(C.D. Cal. Mar. 5, 2020)................................................................................. 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................................... 12

*Bristol-Myers Squibb Co. v. Super. Ct. of California*,
582 U.S. 225 (2017) ....................................................................................... 10

*Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*,
217 F. Supp. 2d 1028 (C.D. Cal. 2002)......................................................... 22

*Canosa v. Ziff*,
No. 18 CIV. 4115 (PAE), 2019 U.S. Dist. LEXIS 13263 (S.D.N.Y.
Jan. 28, 2019)................................................................................................. 16

*Croft v. Dolan*,
No. CV 24-371 PA (AGRx), 2024 U.S. Dist. LEXIS 110935 (C.D.
Cal. June 21, 2024).............................................................................. 7, 14, 15

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ................................................................................... 9, 10

*Destfino v. Kennedy*,
No. CV-F-08-1269, 2009 U.S. Dist. LEXIS 18138 (E.D. Cal. Jan.
7, 2009)............................................................................................................. 8

*Doe v. Esa P Portfolio LLC*,
No. 3:23-cv-06038-TMC, 2024 U.S. Dist. LEXIS 116897 (W.D.
Wash. July 2, 2024) ....................................................................................... 17

*Doe v. FitzGerald*,
No. CV 20-10713-MWF-RAO, 2022 U.S. Dist. LEXIS 130445
(C.D. Cal. May 13, 2022) ......................................................................... 14, 19

*Does v. Reddit, Inc.*,
51 F.4th 1137 (9th Cir. 2022)................................................................... 15, 16

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

-ii-

*Dole Food Co. v. Watts*,
   303 F.3d 1104 (9th Cir. 2002)...................................................................11

*Eckhart v. Fox News Network, LLC*,
   2021 WL 4124616 (S.D.N.Y. Sept. 9, 2021).......................................14

*Fantasy, Inc. v. Fogerty*,
   984 F.2d (9th Cir. 1993), *rev'd on other grounds by Fogerty v.
   Fantasy, Inc.*, 510 U.S. 517 (1994)........................................................21

*Geiss v. Weinstein Co. Holdings LLC*,
   383 F. Supp. 3d 156 (S.D.N.Y. 2019)..........................................16, 17

*Hana Fin., Inc. v. Hana Bank*,
   500 F. Supp. 2d 1228 (C.D. Cal. 2007)...............................................12

*J.C. v. Choice Hotels Int'l, Inc.*,
   No. 20-cv-00155-WHO, 2020 U.S. Dist. LEXIS 201073 (N.D. Cal.
   Oct. 28, 2020)...........................................................................................17

*King v. Perry*,
   No. CV 24-2650 PA, 2024 U.S. Dist. LEXIS 110985 (C.D. Cal.
   June 24, 2024)...........................................................................................10

*LeDuc v. Kentucky Central Life Insurance Co.*,
   814 F. Supp. 820 (N.D. Cal. 1992).......................................................23

*Lyons v. Williams*,
   91 F.3d 1308, 1311 (9th Cir. 1996).......................................................19

*Magluta v. Samples*,
   256 F.3d 1282 (11th Cir. 2001)...............................................................7

*Nguyen v. CTS Elecs. Mfg. Sols. Inc.*,
   301 F.R.D. 337 (N.D. Cal. 2014)..........................................................20

*Nitschke v. Cnty. of San Diego*,
   No. 23-CV-1206-LL-VET, 2024 U.S. Dist. LEXIS 110039 (S.D.
   Cal. June 21, 2024)...............................................................................7, 8

*Noble v. Weinstein*,
   335 F. Supp. 3d 504 (S.D.N.Y. 2018)....................................15, 16, 18

-iii-

*Osgood v. Main Street Mktg., Ltd. Liab. Co.*,
No. 16cv2415-GPC(BGS), 2017 U.S. Dist LEXIS 5625 (S.D. Cal.
Jan. 13, 2017).....................................................................................21, 22, 23

*Ratha v. Phatthana Seafood Co.*,
35 F.4th 1159 (9th Cir. 2022)...............................................................15

*Ricchio v. McLean*,
853 F.3d 553 (1st Cir. 2017) ................................................................16

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F. 3d 797 (9th Cir. 2004) ..........................................................9, 11

*Sollberger v. Wachovia Sec., LLC*,
No. 09-cv-00766-AG-AN, 2010 U.S. Dist. LEXIS 66233 (C.D.
Cal. June 30, 2010)............................................................................7, 9

*Spy Optic, Inc. v. AreaTrend, LLC*,
843 Fed. Appx. 66 (9th Cir. 2021) .......................................................12

*Taylor v. Ron's Liquors, Inc.*,
No. C 10-00694 SI, 2011 U.S. Dist. LEXIS 115621 (N.D. Cal. Oct.
6, 2011)..................................................................................................19

*Thornton v. Solutionone Cleaning Concepts, Inc.*,
No. 06–1455, 2007 WL 210586 (E.D. Cal. Jan. 26, 2007)..................20

*United States v. Afyare*,
632 F. App'x 272 (6th Cir. 2016)....................................................15, 16

*Wakefield v. Olenicoff*,
No. SACV 12-2077 AG (RNBx), 2013 U.S. Dist. LEXIS 197999
(C.D. Cal. Apr. 22, 2013) ....................................................................22

*Wash. Shoe Co. v. A-Z Sporting Goods, Inc.*,
704 F.3d 668 (9th Cir. 2012) ...............................................................11

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
792 F.3d 1313 (11th Cir. 2015) ..............................................................8

*Wilkerson v. Butler*,
229 F.R.D. 166 (E.D. Cal. 2005).........................................................20

DEFENDANTS' MOTION TO DISMISS AND
                                                                    MOTION TO STRIKE COMPLAINT

**Statutes**

18 U.S.C. § 1591..................................................................12, 13, 14, 15

18 U.S.C. § 1595.................................................................*passim*

Cal. Civ. Code § 1708.5 ........................................................20

Cal. Pen. Code § 261(a)(4)(D)...............................................18, 19

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(2).............................................7, 9

Federal Rule of Civil Procedure 12(b)(6)........................................7, 18, 20

Federal Rule of Civil Procedure 12(f) ....................................7, 20, 21, 23

DEFENDANTS' MOTION TO DISMISS AND
MOTION TO STRIKE COMPLAINT

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  PRELIMINARY STATEMENT

Plaintiff and her counsel, Wigdor LLP ("Wigdor"), are using the judicial system to propagate a false and defamatory narrative about Diamant, a highly-respected Black musician in the arts industry, for their own financial gain and to his extreme detriment—and to the destruction of everything he has ever done as a musician and as a Black figure that the current and new art generations look up to. Wigdor followed their usual playbook: *first* slip the unfiled Complaint to the press to cause sensational headlines[1], *then* file it and attempt to rely on the litigation privilege to immunize their malicious conduct, and, *finally,* leverage the damage they have inflicted to extract a settlement, and to hustle Diamant out of hard-earned work and drain his children of important medical needs and present schooling needs.

The Complaint contains *300 paragraphs* of largely irrelevant, inaccurate, and intentionally out-of-context allegations.  Worse yet, the Complaint weaponizes destructive racial stereotypes against Diamant that he and others have faced—and tried to overcome—their entire lives.  Before the Complaint raises a *single* relevant allegation, Plaintiff dedicates several pages to: irrelevant gossip designed to harm Diamant's children and impugn his marital history; unsubstantiated allegations of past violence (none of which resulted in any proceedings or findings against Diamant); false depictions of an absent father; and racist insinuations that Diamant is affiliated with a street gang.  Of course, these character assassinations have nothing to do with the substance of Plaintiff's claims.  Rather, they shamefully proliferate stereotypes plainly harbored by Plaintiff and Wigdor: Diamant is a

---

[1] *See* https://www.wigdorlaw.com/news-press/wigdor-llp-is-one-of-only-three-firms-to-receive-a-band-1-ranking-from-chambers-and-partners-for-the-fourth-year-in-a-row/ (advertising that Wigdor LLP "has made headlines" for a case that was quickly resolved after filing).

DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE COMPLAINT

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

Black man, and therefore he must be (and the public will believe that he is) the violent wrongdoer.

Diamant has a lengthy history of advocacy for women and women's causes, has personal and professional relationships with many strong and successful women, and supports women coming forward to share their stories of abuse. ***This is not that: Plaintiff is not, and never was, Diamant's victim – full stop***. Plaintiff and Diamant were two adults who engaged in a brief and consensual courtship. There was ***never*** non-consensual sex between them; there was ***never*** sex exchanged for money or other commercial gain; and Diamant ***never*** abused Plaintiff in any way. Indeed, Plaintiff routinely sought out Diamant for many years after their interactions ended, unilaterally soliciting sex (and other favors), including in writing, even when Diamant refused.

Diamant categorically denies Plaintiff's allegations in the Complaint—they are simply disconnected from reality, and the Complaint fails in its entirety.

## II.   **RELEVANT TIMELINE**

Plaintiff's narrative that Diamant pursued *her* is false. As shown in many text messages (which Plaintiff cherry-picked to fabricate her claims), Diamant had no idea who Plaintiff was until *she* reached out to Christopher Garland ("Garland"), Diamant's childhood friend, seeking a meeting with Diamant. Plaintiff offered to pay Garland a "finder's fee"[2] for the connection. Once she met Diamant in 2015, it was ***Plaintiff*** who made the first overtly sexual comment, when she pointed at his genitals and asked: "Do you need help with that?" After the early sexual advances ***by Plaintiff***, she and Diamant mutually engaged in a short-lived courtship before Diamant ended it.

---

[2] Despite Garland assisting Plaintiff in securing a meeting with Diamant, Plaintiff never paid the "finder's fee" she proposed. Relatedly, however, she regularly boasted that she was an independently wealthy daughter of a "millionaire stockbroker."

1    Once their short-term courtship was over, it was **_Plaintiff_** who continued to

2    pursue Diamant.  **In June 2016,** long after their courtship ended, Plaintiff

3    unilaterally lobbed strings of bizarre, sexually graphic messages at Diamant.  He

4    was uncomfortable with the communications and responded that she was "trippin"

5    (meaning that she was out of line).  Plaintiff continued anyway, now with an emoji

6    intended to signify male genitals ejaculating next to a smiling, "licking tongue"

7    emoji.  Clearly not interested, Diamant responded: "I'm with my kids."  But

8    Plaintiff continued to text Diamant: **"u had me in my feels," "my imagination is**

9    **running wild," and "I need to get my act together."**

10

11

12

13



14

15

16

17

18

19

20

21

22    For years, Plaintiff regularly lamented the end of the Parties' courtship.  As

23    one example, on June 23, 2016, Plaintiff wrote to Diamant that they **"could have**

24    **created something bigger than life,"** that **"there was just so much more**

25    **ahead,"** and that she wished they could **"hit refresh and start fresh"** together.

26    Indeed, the ending of their courtship **"makes [her] sad still."**

27

28

1
2
3
4
5
6
7
8
9
10
11



12       In addition to the many messages, Plaintiff continued *for years* to use

13  Diamant's extensive connections to secure favors and support for her personal

14  benefit.  When Epic Records dropped Plaintiff from her record deal because she

15  was not successful, Diamant willingly helped Plaintiff whenever she reached out.

16  Diamant never asked for anything in return.  Contrary to any assertion now that

17  Diamant somehow "derail[ed] her career" (*see* Compl. ¶ 263), Diamant routinely

18  told Plaintiff: ". . . anything u need just let me know."  Plaintiff took Diamant up

19  on favors regularly.

20       As recently as June and July ***2023***, Plaintiff continued to dwell on the end of

21  her courtship with Diamant.  She wrote to Garland, sending her **"regards"** to

22  Diamant, reflecting on the **"tremendous amount of respect"** she had for him and

23  **"the opportunities [she] was given,"** reminiscing on the times she spent in the

24  studio with Diamant, and (once again) lamenting the end of their courtship.  While

25  Plaintiff now claims that her time with Diamant was a "prolonged nightmare,"

26  Plaintiff told Garland *less than a year* ago: **"I'll always be grateful for the**

27  **moments I got to spend in the studio with you guys!"**

28

> Good to hear you made your dreams come true!! Well if you ever talk to dream send him my regards 🙏. Talking to you brought back some memories and I really wish everything went differently, I was so young too! But have a lot of respect for the opportunities I was given in that time. I never really go to say any of that, and I assume it's not something he cares to hear at the point 😅 which I'd respect! But never too late to say "hey that could've gone differently and I have a tremendous amount of respect! Life is about moments! And it'll always be grateful for the moments I got to spent in the studio with you guys! X

Despite these recent exchanges and the amicable friendship that the Parties maintained for *years*, Plaintiff and Wigdor have opted now to somehow capitalize on the relationship in a different way, making Diamant just another number in a flurry of sexual misconduct lawsuits against high profile individuals in the entertainment industry, many of whom are Black.

Plaintiff's Complaint against Diamant is clearly framed for the media and not a Court, including but not limited to: (1) a highly prejudicial, oversized "TRIGGER WARNING" stamp plastered across the cover page; (2) scores of irrelevant details of Diamant's private life published for the sole purpose of embarrassing him; (3) countless falsehoods designed to smear Diamant's reputation with the purported protection of California's litigation privilege; and (4) most egregiously, deliberately including at least one highly inflammatory cause of action for shock value that Wigdor admits is not otherwise viable.

To ensure that Diamant would be completely unprepared for the Complaint that upended his life and to inflict maximum harm, Plaintiff took the *un-filed* Complaint straight to the *New York Times* for publication. After the devastating contents of the Complaint had been successfully leaked, Plaintiff appears to have shopped the Complaint around to over a dozen publications that eagerly covered this fabricated scandal.

DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE COMPLAINT

Plaintiff attempts to destroy not only Diamant but innocent third parties associated with Diamant.  For example, Plaintiff suggests that Garland wielded a firearm in order to intimidate Plaintiff into being sex trafficked.  This is a lie. Garland is a highly respected U.S. Army Veteran who served this country in active duty for nearly a decade.  After he retired from the Army, Garland started a security business—which furnished him with a license to own and carry a firearm. Plaintiff and Wigdor **_knew_** these facts about Garland (Plaintiff applauded Garland for the successful security company he founded in the very text messages she now relies on to smear and defame him) and purposefully mischaracterized them to make a decorated army veteran look like a criminal.  *See, e.g.*, Compl. ¶ 118.

Plaintiff has also used her knowledge of Diamant's personal life to hurt other innocent people she *knows* Diamant cares about the most: his children, his wife, and those he considers family—including the diverse group of female musicians he has worked with over the past two decades.  Plaintiff *knows* that Diamant shares a close bond with his four daughters and was extraordinarily close with his late mother, for whom Diamant now runs a charity that supports survivors of ovarian cancer.[3]  Plaintiff and Wigdor have targeted these individuals and these relationships by falsely characterizing Diamant as misogynist, a deadbeat parent, and a domestic abuser.  Indeed, Diamant's children have suffered cyberbullying and social abuse as a *direct* result of Plaintiff's publishing of false claims.  These character assassinations do nothing to support any legal claims; they are gratuitous and attempt to force Diamant to **_choose_** between settling and the possibility of losing the most important relationships in his life.

---

[3] *See* https://www.therevamaynashfoundation.org ("The Reva May Nash Foundation was founded as a public charity by Terius "The-Dream" Gesteelde-Diamant and wife Laylani Gesteelde-Diamant, to honor the legacy of his mother Reva May Nash who succumbed to ovarian cancer in 1992.").

As in other cases where Wigdor's sex trafficking claims were dismissed (*see infra* Section I.V., discussing Wigdor's failed trafficking claims in *Croft v. Dolan*), the Complaint here is nothing more than a legally insufficient hit piece.  This Court should dismiss and strike Plaintiff's Complaint under the Federal Rules of Civil Procedure ("FRCP") for *at least* the following reasons discussed in further detail below: (1) Plaintiff's Complaint is an impermissible shotgun pleading; (2) this Court lacks personal jurisdiction over CPL (*see* FRCP 12(b)(2)); (3) Plaintiff fails to state a claim for Sex Trafficking under 18 U.S.C. Section 1595 (*see* FRCP 12(b)(6)); (4) Plaintiff fails to (and cannot) state a claim for "Rape" (*see* FRCP 12(b)(6)); and (5) Paragraphs 29-38 and 118 of the Complaint are impermissibly immaterial, impertinent, and scandalous material (*see* FRCP 12(f)).

## III. <u>THE COMPLAINT MUST BE DISMISSED BECAUSE IT IS AN IMPROPER SHOTGUN PLEADING AND DOES NOT COMPLY WITH RULE 8(a)</u>

"Shotgun pleadings are pleadings that overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations."  *Sollberger v. Wachovia Sec., LLC*, No. 09-cv-00766-AG-AN, 2010 U.S. Dist. LEXIS 66233, at *4 (C.D. Cal. June 30, 2010).  The hallmark of shotgun pleadings are "allegations that 'the defendants' engaged in certain conduct, making no distinction among . . . defendants charged . . . ."  *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).

This court has *sharply* criticized shotgun pleadings.  *Nitschke v. Cnty. of San Diego,* No. 23-CV-1206-LL-VET, 2024 U.S. Dist. LEXIS 110039 at *7 (S.D. Cal. June 21, 2024) (collecting cases from the Southern and Central Districts of California and noting that "[m]any courts, including this one, have sharply criticized shotgun pleading[s]").  Federal courts generally recognize four key types of shotgun pleadings: (1) a complaint that commits the "mortal sin" of "containing

-7-

multiple counts where each count adopts the allegations of all preceding counts;" (2) a complaint "guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;" (3) a complaint that fails to separate each cause of action into a separate count; and (4) a complaint that commits the "rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." *See Weiland v. Palm Beach Cnty. Sheriff's Off*., 792 F.3d 1313, 1321-23 (11th Cir. 2015); *see also Nitschke,* 2024 U.S. Dist. LEXIS 110039, at *8-9 (adopting *Weiland's* categorization of the common types of shotgun pleadings).

Here, Plaintiff commits ***at least*** three of the "sins" first identified by the *Weiland* court and subsequently recognized by California's district courts. ***First***, each of Plaintiff's causes of action begin with the phrase: "Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein." *See* Compl. ¶¶ 288, 295, 300. As a result, each cause of action incorporates nearly *300* paragraphs worth of factual allegations (plus all successive causes of action) and Defendants are forced to guess at which allegations Plaintiff has furnished in support of each cause of action. *See, e.g.*, *Destfino v. Kennedy*, No. CV-F-08-1269, 2009 U.S. Dist. LEXIS 18138 at *14 (E.D. Cal. Jan. 7, 2009) (a "shotgun pleading" is a complaint that "incorporate[s] each preceding paragraph, regardless of relevancy").

***Second***, and as discussed in Defendants' request to strike portions of Plaintiff's Complaint, the pleading is *replete* with dozens of irrelevant allegations that have no connection to this case, are included solely to attack Diamant's reputation, and/or appear to be unrelated to any element of Plaintiff's three causes of action in her Complaint.

***Third***, Plaintiff has committed the "rare sin" of failing to specify "which of the defendants are responsible for which acts or omissions." *Weiland*, 792 F.3d at

-8-

DEFENDANTS' MOTION TO DISMISS AND
MOTION TO STRIKE COMPLAINT

1323.  Specifically, Plaintiff ambiguously alleges perpetrator *and* beneficiary liability under 15 U.S.C. Section 1595 but does not clarify which alleged acts or omissions are intended to be attributed to which defendant.  For example, Plaintiff discusses the conduct of various individuals—including non-parties Christopher "Tricky" Stewart, Antonio "L.A." Reid, Garland, Mark Stewart, J. Erving, and Erika Coulter—in *great* detail but fails to describe: (1) whether Plaintiff intends to claim that the actions of these individuals should be imputed to Diamant, Epic Records, or CPL (or none of them); (2) whether Plaintiff has described the actions of these individuals to support perpetrator liability, beneficiary liability, or some other theory of liability (or none); and (3) which defendant or defendants are alleged to be responsible for each alleged act or omission.

In sum, because Plaintiff has indiscriminately incorporated more than 50 pages of factual allegations into each cause of action, it is impossible for Defendants to make informed responses to Plaintiff's allegations.  Plaintiff's shotgun pleading should therefore be dismissed.  *See Sollberger*, 2010 U.S. Dist. LEXIS 66233, at *4 (shotgun pleadings that make it difficult or impossible for defendants to make informed responses are "unacceptable").

## IV.  THIS COURT LACKS PERSONAL JURISDICTION OVER CPL

A party may move the court to dismiss a complaint for "lack of personal jurisdiction."  FRCP 12(b)(2).  As described in detail below, CPL must be dismissed because Plaintiff cannot establish that California has either general or specific jurisdiction over CPL. *See Schwarzenegger v. Fred Martin Motor Co.,* 374 F. 3d 797, 800 (9th Cir. 2004) (holding that the *plaintiff* bears the burden of demonstrating that jurisdiction is appropriate in response to a motion to dismiss).

### A.  This Court Lacks General Personal Jurisdiction Over CPL

General personal jurisdiction over a defendant exists only when the defendant's contacts with the forum state are "so continuous and systematic as to render [it] essentially at home in the forum State."  *Daimler AG v. Bauman,* 571

U.S. 117, 127 (2014).  General personal jurisdiction over a limited liability company is appropriate *only* in the forum where the company is incorporated or has its principal place of business, or in exceptional cases where the corporation's contacts with the forum state are "so constant and pervasive as to render [it] essentially at home in the forum State."  *See Daimler AG,* 571 U.S. at 122, 134; *see also Athena Cosms., Inc. v. U.S. Warehouse*, No. CV 19-8466-MWF (MRW), 2020 U.S. Dist. LEXIS 73797, at *10-11 (C.D. Cal. Mar. 5, 2020).

Here, CPL is a Delaware limited liability company with its principal place of business in Atlanta, Georgia.  *See* Declaration of Desirée F. Moore ("Moore Decl."), Ex. B; Declaration of Terius Gesteelde-Diamant ("Diamant Decl.") ¶ 3. CPL has no "substantial" or "continuous and systematic" activities or contacts in the State of California.  CPL does not currently (and has never) transacted business in California.  *See* Moore Decl., Ex. C; Diamant Decl. ¶ 4.  CPL has no physical presence in California given that none of CPL's executives, officers, managing members, employees, or agents are located in or maintain an office in California. Diamant Decl. ¶ 5.

In short, *none* of CPL's operations occur or have ever occurred in California, nor are they related to California in any way.  Accordingly, this Court lacks general personal jurisdiction over CPL.  *See, e.g., King v. Perry,* No. CV 24-2650 PA (JCx), 2024 U.S. Dist. LEXIS 110985, at *9 (C.D. Cal. June 24, 2024) (finding that this Court lacked jurisdiction over a foreign LLC where its principal place of business was Atlanta, Georgia and the company did not transact business in California).

## B.  <u>This Court Lacks Specific Personal Jurisdiction Over CPL</u>

To satisfy the test for specific jurisdiction, Plaintiff bears the burden to establish that her suit arises out of or relates to CPL's contacts with the forum.  *See Bristol-Myers Squibb Co. v. Super. Ct. of California,* 582 U.S. 225, 263 (2017). The Ninth Circuit's three-prong test for determining the existence of specific

-10-

DEFENDANTS' MOTION TO DISMISS AND
MOTION TO STRIKE COMPLAINT

personal jurisdiction includes: (1) the defendant's purposeful availment to the benefits and protections of the laws of the state; (2) the claims' relation to the defendant's forum-related activities; and (3) whether the exercise of jurisdiction is reasonable (*i.e.* comports with "fair play and substantial justice"). *Schwarzenegger*, 374 F.3d at 802.  The plaintiff bears the burden of proving the first two prongs of the test.  *Id.*

"A purposeful availment analysis is most often used in suits sounding in contract," while a "purposeful direction analysis . . . is most often used in suits sounding in tort."  *Id.*  The Ninth Circuit applies the *Calder* "effects" test to evaluate purposeful direction.  *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (citing *Calder v. Jones*, 465 U.S. 783 (1984)).  Under the three-part *Calder* test, the plaintiff must establish that the defendant: (1) committed an intentional act; (2) expressly aimed at the forum state; (3) causing harm that the defendant knows is likely to be suffered in the forum state.  *Id.*  An "intentional act" is "an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results." *See Wash. Shoe Co. v. A-Z Sporting Goods, Inc*., 704 F.3d 668, 674 (9th Cir. 2012).

The Court does not have specific personal jurisdiction over CPL because the Complaint fails to allege that CPL committed *any* intentional act—let alone an intentional act directed at California.  Although Plaintiff makes countless generalized claims about *Diamant's* conduct, the Complaint only appears to reference three categories of CPL's "conduct:" (1) CPL's execution of the April 21, 2015 contract with Plaintiff (*see* Compl. ¶ 173); (2) CPL's so-called "facilitation" of Diamant's alleged "depraved behavior" (*see, e.g.*, Compl. ¶ 9); and (3) the existence of CPL's website (*see* Compl. ¶ 27).

The limited allegations against CPL support that the Court lacks personal jurisdiction over Diamant.  First, the April 21, 2015 contract was not executed in

-11-

DEFENDANTS' MOTION TO DISMISS AND
MOTION TO STRIKE COMPLAINT

California.  CPL is located in Georgia and Plaintiff was in the Netherlands when she executed the contract (*see* Compl. ¶ 173).  Second, the Complaint provides no facts in support of CPL's so-called "facilitation" and does not allege that the facilitation included intentional conduct.  Third, Plaintiff admits that CPL's website is "defunct;" therefore, the website cannot support a theory of CPL's purposeful direction towards *any* forum.  *See* Compl. ¶ 27.  It is well-established that "[o]perating a universally accessible website alone cannot satisfy the express aiming prong," anyway.  *See Spy Optic, Inc. v. AreaTrend, LLC*, 843 Fed. Appx. 66, 68 (9th Cir. 2021).

Plaintiff has *wholly* failed to establish that CPL is either: (1) at home in California; or (2) purposefully availed itself to the laws of this state by expressly aiming its activities at California or causing harm that it knows is likely to be suffered in California.  Therefore, CPL should be dismissed for lack of personal jurisdiction.

## V.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE TVPRA

Plaintiff has failed to allege facts sufficient to support a claim for sex trafficking under 18 U.S.C. Sections 1591 and 1595 of the Trafficking Victims Protection Reauthorization Act ("TVPRA").  Therefore, Plaintiff's TVPRA claim should be dismissed.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (finding that a complaint must include "enough facts to state a claim to relief that is plausible on its face"); *Hana Fin., Inc. v. Hana Bank*, 500 F. Supp. 2d 1228, 1232 (C.D. Cal. 2007) ("Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.").

18 U.S.C. Section 1591 provides for criminal penalties for sex trafficking for individuals who engaged *directly* in trafficking (*i.e.* "perpetrators"), as well as those who knowingly participate in and benefit from sex trafficking (*i.e.* "beneficiaries").  18 U.S.C. Section 1595 provides a private right of action for

-12-

1  violations of Section 1591 and allows trafficking victims to file suit directly

2  against perpetrators and their beneficiaries.

3      Here, Plaintiff's sex trafficking claim against both Defendants is based on

4  the allegations that Diamant: (1) required Plaintiff to engage in forced sexual acts;

5  (2) harbored and transported Plaintiff "for purposes of sex induced by force, fraud,

6  or coercion;" and (3) benefitted by holding Plaintiff "captive" to his demands and

7  desires. *See* Compl. ¶ 290. Plaintiff further alleges that Defendants formed a

8  "venture" as defined by 18 U.S.C. Section 1595, and collectively benefitted from

9  the trafficking scheme because it kept Diamant "satisfied." *Id.* at 291-92. Plaintiff

10 specifically alleges that Defendants benefitted from "facilitating" Diamant's

11 "behavior to the extent it kept their relationship with [him] viable and ensured

12 continued profit from his work." *Id.* at 291.

13     These allegations are insufficient to support a claim for perpetrator *or*

14 beneficiary liability under TVPRA.

15  **A.   The Complaint Fails to Allege Direct Perpetrator Liability**

16       **Against Diamant Under 18 U.S.C. Section 1591(a)(1)**

17     To establish a direct liability claim, Plaintiff must allege that Diamant

18 knowingly and in interstate or foreign commerce: (1) recruited, enticed, harbored,

19 transported, provided, obtained, or maintained by any means a person;

20 (2) "knowing, or in reckless disregard of the fact, that means of force, threats of

21 force, fraud . . . or any combination of such means will be used"; (3) "to cause the

22 person to engage in a commercial sex act." 18 U.S.C. § 1591(a)(1).

23     Plaintiff fails to do so. Specifically, the Complaint's threadbare allegations

24 are insufficient to plausibly allege the occurrence of a "commercial sex act" under

25 the TVPRA. "Commercial sex act" means "any sex act *on account of which*

26 anything of value is given to or received by any person." *See* 18 U.S.C. §

27 1591(e)(3) (emphasis added). The forgoing "on account of" language requires a

28 *causal* connection between the "thing of value" and the sex act. The Complaint

-13-

does not allege the requisite causal connection and fails to allege the receipt, by any party, of "anything of value."

*Croft v. Dolan*—one of many sex trafficking cases filed by Wigdor—is instructive here.  No. CV 24-371 PA (AGRx), 2024 U.S. Dist. LEXIS 110935 (C.D. Cal. June 21, 2024).  In *Croft,* in support of a commercial sex act, plaintiff alleged that the defendant promised "career support or advancement," agreed to pay for the plaintiff to join the defendant's musical tour, and agreed to pay plaintiff a small allowance (referred to as "venue pay").  *Id.*, at *16.  While on tour, the plaintiff was required to stay at the defendant's hotel "so that he could summon her for unwanted sexual activity at any time."  *Id.*, at *15-16.

Judge Percy Anderson (USDC Central District of California, Courtroom 9A) found that the plaintiff's allegations were "insufficient to allege a commercial sex act under the TVPRA because there was no alleged causal connection between the payment of Plaintiff's travel expenses and 'venue pay' and the sexual conduct [the plaintiff] alleges she was forced to engage in."  *Id.*, at *16.  The *Croft* court compared the facts alleged in that case to the allegations in *Doe v. FitzGerald*, where the allegations *were* sufficient to allege a causal connection under 18 U.S.C. Section 1591(e)(3) given that the defendant offered to exchange "$200 and clothing" in "payment for the sex acts."  *See* No. CV 20-10713-MWF-RAO, 2022 U.S. Dist. LEXIS 130445, at *11-12 (C.D. Cal. May 13, 2022); *see also Eckhart v. Fox News Network, LLC*, 2021 WL 4124616, at *9-12 (S.D.N.Y. Sept. 9, 2021) (allegations sufficient to show causal connection where promises to help plaintiff advance her career resulted in her entering her perpetrator's hotel room).

As in *Croft,* Plaintiff's TVPRA claim should be dismissed.  Plaintiff alleges that she was kept confined in a hotel room that Diamant paid for and was expected "to be available to have sex with [Diamant] whenever he demanded it."  *See* Compl. ¶¶ 102, 119.  Plaintiff additionally claims that Diamant promised her a recording contract, an apartment, and paid living expenses if Plaintiff *decided to*

-14-

DEFENDANTS' MOTION TO DISMISS AND
MOTION TO STRIKE COMPLAINT

*move to Atlanta* (wholly unrelated to any sex act).  *Id.* ¶ 109.  As in *Croft,* these alleged exchanges ***fail*** to causally connect Plaintiff's alleged sex acts to the receipt of any "thing of value."  Indeed, Plaintiff alleges she did not get anything at all out of the relationship, including the elusive fame and fortune she continues to chase. Without the requisite causal connection to something of value, Plaintiff's claim against Diamant for perpetrator liability must fail.  *See Croft*, 2024 U.S. Dist. LEXIS 110935, at *17 ("Because Plaintiff does not allege that [Defendant] made any direct statements or promises to entice, lure or coerce her into a sexual relationship, she fails to allege a commercial sex act . . . .").

Thus, Plaintiff's claim for direct perpetrator liability under Section 159l(a)(l) should be dismissed for failure to state a claim.

**B.   <u>The Complaint Fails to Allege Beneficiary Liability Against CPL Under 18 U.S.C. Section 1591(a)(2)</u>**

To succeed on a beneficiary liability theory under Section 1591(a)(2), the plaintiff must allege that the defendant participated in and benefitted from a sex trafficking scheme.  *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1175 (9th Cir. 2022).  As an initial matter, Plaintiff's beneficiary liability theory *cannot* succeed given that there is no underlying perpetrator liability.  However, Plaintiff has also failed to allege that CPL participated in or benefitted from an underlying sex trafficking scheme.

Mere *association* with alleged sex traffickers is insufficient to support a claim for beneficiary liability absent some knowing "participation."  *See Does v. Reddit, Inc.* ("*Reddit*"), 51 F.4th 1137, 1145 (9th Cir. 2022) (citing 18 U.S.C. § 1591(e)(4)).  The Ninth Circuit has adopted the Second and Sixth Circuit's approach to beneficiary liability, which requires that the alleged beneficiary have actually "engaged in some aspect of the sex trafficking."  *See id.* (approving the holdings in *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016) and *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018)).  Moreover, the

-15-

DEFENDANTS' MOTION TO DISMISS AND
MOTION TO STRIKE COMPLAINT

plaintiff must allege that the defendant-beneficiary knowingly benefited from *and* knowingly assisted, supported, or facilitated sex trafficking activities. *See Noble*, 335 F. Supp. 3d at 524 (holding that a plaintiff must allege some "specific conduct [by the defendant] that furthered the sex trafficking venture . . . undertaken with knowledge" of the venture). The statute does not target those that merely "turn a blind eye to the source of their [revenue]." *Afyare*, 632 F. App'x at 286. Knowingly benefitting from participation in such a venture requires actual knowledge and "a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019).

At most, Plaintiff's allegations suggest that CPL may have "turned a blind eye" to Diamant's alleged conduct and individuals associated with CPL may have transported Plaintiff. These allegations do not indicate that CPL *actively* participated in sex trafficking. *See Afyare*, 632 F. App'x at 286. As the Court in *Does v. Reddit, Inc.* noted, Plaintiffs who have successfully alleged beneficiary liability for sex trafficking have charged defendants with *active* forms of participation. *See, e.g.*, *Reddit*, 51 F.4th at 1146*; Canosa v. Ziff*, No. 18 CIV. 4115 (PAE), 2019 U.S. Dist. LEXIS 13263, at *23-24 (S.D.N.Y. Jan. 28, 2019) (denying motion to dismiss beneficiary liability claims where plaintiffs alleged affiliates of Harvey Weinstein *lured* victims and provided Weinstein with "medications he required to perform sexual acts," and then "cleaned up after his sexual assaults"); *Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017) (venture shown where defendants "enthusiastically expressed" intent to continue renting out motel rooms for trafficking purposes by "exchanging high-fives in the motel's parking lot" with the traffickers).

Moreover, Plaintiff has failed to allege a connection between Diamant's alleged sex trafficking and any revenue CPL generated. *See Noble*, 335 F. Supp. 3d at 524. It is *vital* for Plaintiff to "plausibly connect the dots" between the

1  defendant and the sex trafficking venture in order to survive a motion to dismiss.

2  *See Doe v. Esa P Portfolio LLC* ("*Esa P*"), No. 3:23-cv-06038-TMC, 2024 U.S.

3  Dist. LEXIS 116897, at *17 (W.D. Wash. July 2, 2024).  For example, in *J.C. v.*

4  *Choice Hotels Int'l, Inc.*, the plaintiff survived a motion to dismiss by showing that

5  the beneficiary-defendants provided lodging to people they *knew* were engaged in

6  sex trafficking due to demonstrable reporting policies that required staff to report

7  trafficking to the named corporate defendants.  No. 20-cv-00155-WHO, 2020 U.S.

8  Dist. LEXIS 201073, at *20-21 (N.D. Cal. Oct. 28, 2020).

9      Here, Plaintiff's Complaint does not and cannot "connect the dots" from

10  CPL to Diamant's alleged conduct because Plaintiff's theory of liability has been

11  universally rejected by federal courts.  Specifically, Plaintiff hangs her hat on the

12  allegation that CPL "facilitated" and benefited from a sex trafficking scheme solely

13  because Diamant's alleged sexual misconduct "satisfied" him and kept CPL's

14  "relationship with [him] viable and ensured continued profit from his work."

15  Compl. ¶ 291.  Federal courts across the country have **_repeatedly_** determined that

16  this strained theory of beneficiary liability based on the perpetrator's "satiation"

17  and continuing profits **_is not sufficient_** to support a TVPRA claim.

18      Plaintiff asserts the same argument that was rejected in *Geiss*.  There, the

19  plaintiff claimed that Harvey Weinstein's business (the Weinstein Company) must

20  be a "beneficiary" of Mr. Weinstein's alleged sex trafficking merely because the

21  company financially benefited from the profits Mr. Weinstein was generating *while*

22  he was being satiated by his sexual misconduct.  *See Geiss,* 383 F. Supp. 3d at 169-

23  70.  The Court found that beneficiary liability did not apply to the Weinstein

24  Company and further explained that the "controlling question" for beneficiary

25  liability was whether the perpetrator provided any benefits to the corporate entity

26  **_because of_** the company's participation in the perpetrator's sexual misconduct.  *Id.*

27  Like in *Geiss,* Diamant's alleged "satisfaction" and ability to continue generating

28

income for CPL while sexual misconduct was occurring cannot support beneficiary liability.

The Complaint also does not sufficiently allege (or allege at all) that CPL *participated* in Diamant's alleged trafficking. Bare allegations that CPL, or its employees and/or agents, merely *facilitated* sex trafficking by, *inter alia*, transporting Plaintiff to and from various locations are similarly insufficient under the statute. *See Noble*, 335 F. Supp. 3d at 524-25 (dismissing sex trafficking "participation" claim against those who "facilitated" travel to and from sex trafficking incidents and "benefitted financially from [Mr. Weinstein's] promotion of films and other business-related activities in foreign commerce," because the plaintiff failed to allege any facts that *linked* the alleged beneficiary's actions to Mr. Weinstein's wrongful conduct towards the plaintiff). The *Noble* Court further opined that "mere membership" in an alleged sex trafficking venture is insufficient for beneficiary liability and that the sex trafficking statute "does not target [those] who turn a blind eye to the source of their financial sponsorship." *Id.* at 524.

In sum, Plaintiff's claim for sex trafficking under Section 1595 against CPL must be dismissed because Plaintiff does not (and cannot) allege that Diamant provided any benefits to CPL ***because of*** CPL's participation in Diamant's alleged trafficking.

## VI. PLAINTIFF'S THIRD CAUSE OF ACTION FOR "RAPE" UNDER CALIFORNIA PENAL CODE SECTION 261(a)(4)(D) MUST BE DISMISSED

"Rape" is not a cognizable civil cause of action and must be dismissed with prejudice for failure to state a claim. *See* FRCP 12(b)(6). Plaintiff does not disagree. In the Parties' August 8, 2024 Meet and Confer, Wigdor admitted that "Rape" is not a viable cause of action but refused to amend the Complaint anyway. *See* Moore Decl. ¶¶ 4-5.

Plaintiff appears to assert a cause of action for "Rape" under California Penal Code Section 261(a)(4)(D).  Section 261(a)(4)(D) is a *criminal* statute that was enacted under Title 9 of the Penal Code, which codifies: "***Crimes*** Against the Person Involving Sexual Assault, and ***Crimes*** Against Public Decency and Good Morals."  *See* Cal. Pen. Code Pt. 1, Title 9 (emphases added).  Nothing in Penal Code Section 261 authorizes a private or civil cause of action for "Rape."  *See generally* Cal. Pen. Code § 261.

Rather, rape is an act that falls within, and is subsumed by, the civil claim for sexual battery—which appears in the Complaint as Plaintiff's *Second* Cause of Action.  *See* Compl. ¶¶ 295-99.  In *Lyons v. Williams*, the Ninth Circuit confirmed that the civil analog for criminal rape is a claim for sexual battery:

> What is true of ordinary battery is equally true of the gross, intimate and odious touching against one's will that constitutes rape. . . Where an act of rape forms part of a civil cause of action, the nature of the act to be proved is not altered . . . The tort analogous to rape in California is sexual battery.  Cal. Civ. Code § 1708.5 (West 1996) . . . where the alleged rape was the centerpiece of a claimed violation of civil rights, it was the burden of the plaintiff to prove every element of the alleged violation.

91 F.3d 1308, 1311 (9th Cir. 1996).  In short, the act of rape may be criminally prosecuted under a rape charge *or* may be incorporated into a civil suit as a sexual battery tort.

California district courts have repeatedly affirmed that the civil cause of action for "rape" is sexual battery.  *See, e.g.*, *No v. FitzGerald*, No. CV 20-10713-MWF (RAOx)), 2022 U.S. Dist. LEXIS 130445, at *25 (C.D. Cal. May 13, 2022) (failing to identify "rape" as a discrete civil cause of action but confirming that a rape allegation is "sufficient to support a claim for sexual battery" under California law); *Taylor v. Ron's Liquors, Inc.*, No. C 10-00694 SI, 2011 U.S. Dist. LEXIS 115621, at *10-12 (N.D. Cal. Oct. 6, 2011) (finding that criminal liability for rape under California Penal Code section 261(a)(4) constitutes the "civil wrong" of sexual battery).  The California State Legislature and Judicial Counsel have further

-19-

confirmed the lack of a civil cause of action for "rape" by publishing several civil jury instructions and code sections for "sexual battery" and *none* for "rape." *See* BAJI 7.56 (approved jury instructions for claim of "sexual battery"); CACI 1306 (providing "essential factual elements" for "sexual battery"); Cal. Civ. Code § 1708.5 ("Liability of person who commits sexual battery; Intimate part; Offensive contact").

Even *if* California law permitted Plaintiff to invent a novel theory of liability for rape (and it does not), the Third Cause of Action must be stricken from the Complaint as an impermissibly redundant claim. *Compare* Compl. ¶¶ 295-299 ("Second Cause of Action – Sexual Battery") (alleging forceful and non-consensual sexual contact, Diamant's alleged conscious disregard for Plaintiff's rights, and Diamant's alleged intent to cause fear or injury) *with* Compl. ¶¶ 300-304 ("Third Cause of Action – Rape") (asserting nearly identical allegations of forceful and non-consensual sexual contact, Diamant's alleged conscious disregard for Plaintiff's rights, and Diamant's alleged intent to cause fear or injury). A motion to strike under Federal Rules of Civil Procedure 12(f) lies where, as here, certain allegations or causes of action are redundant of other causes of action. *See, e.g.*, *Thornton v. Solutionone Cleaning Concepts, Inc.*, No. 06–1455, 2007 WL 210586, at *1 (E.D. Cal. Jan. 26, 2007) (confirming that "redundant" matter under Rule 12(f) includes the needless repetition of allegations); *Wilkerson v. Butler*, 229 F.R.D. 166, 171-72 (E.D. Cal. 2005) (striking causes of action which were redundant to other causes of action); *Nguyen v. CTS Elecs. Mfg. Sols. Inc*., 301 F.R.D. 337, 341-42 (N.D. Cal. 2014) (same).

Plaintiff's Third Cause of Action for "Rape" must therefore be dismissed with prejudice under Rule 12(b)(6) for failure to state a claim or, in the alternative, stricken in its entirety as impermissibly redundant matter pursuant to Rule 12(f).

1

2

## VII.    <u>IMPROPER MATERIAL IN PARAGRAPHS 29 THROUGH 38 AND PARAGRAPH 118 MUST BE STRICKEN FROM THE COMPLAINT</u>

3       Pursuant to FRCP 12(f), a court "may order stricken from any pleading any

4 insufficient defense or any redundant, immaterial, impertinent, or scandalous

5 matter." "Immaterial matter is that which has no essential or important

6 relationship to the claim for relief or the defenses being pleaded . . . . 'Impertinent'

7 matter consists of statements that do not pertain, and are not necessary, to the

8 issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d, 1524, 1527 (9th Cir. 1993),

9 *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).

10 "Scandalous" allegations needlessly attack the moral character of an individual or

11 "improperly cast[] a derogatory light on someone." *Osgood v. Main Street Mktg.,*

12 *Ltd. Liab. Co.*, No. 16cv2415-GPC(BGS), 2017 U.S. Dist LEXIS 5625, at *32

13 (S.D. Cal. Jan. 13, 2017).

14       Plaintiff's Complaint contains numerous allegations that have absolutely

15 *nothing* to do with her claims and were included in the Complaint for the sole

16 purpose of disparaging and defaming Diamant ostensibly behind the shield of

17 litigation privilege. For example, Plaintiff states that Diamant must be a "violent

18 misogynist" (*see* Compl. ¶ 38) because disreputable gossip columns and tabloids

19 like TMZ.com have reported *allegations* (*i.e.,* not convictions) of past violence.

20 *See* Compl. ¶¶ 29, 34, 35, 38. The Complaint also discusses: (1) Diamant's alleged

21 "chauvinism" due to his past relationships, marriages, divorces, and *alleged* affairs

22 (*see* Compl. ¶¶ 30, 31, 33, 36); (2) Diamant's parenting skills, number of children,

23 and number of women with whom he has had children (*see* Compl. ¶¶ 30, 32); and

24 (3) Diamant's general thoughts on masculinity and marriage (*see* Compl. ¶¶ 32, 33,

25 37). Finally, the Complaint includes the ***assumption*** that Diamant "presumably"

26 was not permitted to carry weapons due to bare ***allegations*** of domestic violence.

27 *See* Compl. ¶ 118, n.11.

28

1        These claims have *zero* relevance to any of Plaintiff's allegations.  Plaintiff's

2   self-serving take on Diamant's marital history and parenting of his children have

3   no impact on Plaintiff's claims given, among other things, that she never married,

4   divorced, became pregnant, or had children with Diamant.  The *only* purpose for

5   including these personal details is to attack Diamant and prejudice the public, the

6   press, the jury, and any future reader of the Complaint.  Indeed, this Court has

7   granted motions to strike personal details that were ***far*** less prejudicial and

8   scandalous.  *See, e.g.*, *Wakefield v. Olenicoff*, No. SACV 12-2077 AG (RNBx),

9   2013 U.S. Dist. LEXIS 197999, at \*6-8 (C.D. Cal. Apr. 22, 2013) (granting

10   defendants' motion to strike allegations about a defendant's financial status,

11   finding that these "[d]etails regarding [defendant's] personal life" were not only

12   immaterial and impertinent to the controversy, but also prejudicial).

13        The inflammatory character assassination of Diamant in Paragraphs 29

14   through 38 and 118 are particularly egregious and should be stricken from the

15   Complaint given the substantial and permanent prejudice the content will generate

16   against Diamant throughout the pendency of this case.  *See Cal. Dep't of Toxic*

17   *Substances Control v. Alco Pac., Inc*., 217 F. Supp. 2d 1028, 1033 (C.D. Cal.

18   2002) (finding that "the *possibility* that . . . superfluous pleadings will cause the

19   trier of fact to draw 'unwarranted' inferences at trial is the type of prejudice that is

20   sufficient to support the granting of a motion to strike") (emphasis added).

21        For example, the past and unrelated *allegations* of Diamant's violent

22   tendencies—which indisputably never resulted in a trial or conviction—must be

23   stricken given that: (1) they have no relationship to any of the elements in

24   Plaintiff's sex trafficking or sexual battery claims; and (2) they are highly likely to

25   cause the jury and others to believe, without basis, that Diamant has violent

26   proclivities.  *Osgood v. Main Street Mktg., Ltd. Liab. Co.* is instructive.  In

27   *Osgood*, which involved causes of action pursuant to California Penal Code and

28   RICO, among other statutes, the defendants moved to strike a "screen shot of

criminal charges" and allegations that the defendant was a "convicted child molester." 2017 U.S. Dist. LEXIS 5625, at *2, 33. The court granted defendants' motion to strike, finding that the allegations had "no relevance to the causes of action" and were "scandalous and cast[] a derogatory light on [defendant]." *Id.*, at *33-34. As in *Osgood*, Plaintiff's allegations must be stricken to protect Diamant from undue and unjustified prejudice. *Id.,* at *33 ("scandalous allegations" will be stricken to "protect the person who is the subject of the allegations").

Defendants anticipate that Plaintiff will attempt to save her prejudicial allegations by claiming that they provide appropriate "background" information and merely contribute to the reader's understanding of Diamant's character. This is insufficient to defeat Defendants' motion to strike. *See LeDuc v. Kentucky Central Life Insurance Co.,* 814 F. Supp. 820, 830 (N.D. Cal. 1992) (confirming that the court may strike unduly prejudicial material even if it tends to supply background information or other facts that "contribute to a full understanding of the complaint").

Accordingly, pursuant to FRCP 12(f), Defendants respectfully request that the Court strike the allegations in Paragraphs 29 through 38 and Paragraph 118 given their patently scandalous, impertinent, and immaterial nature.

## VIII. <u>CONCLUSION</u>

Defendants respectfully request that the Court enter an Order dismissing Plaintiff's Complaint *in its entirety* as an impermissible shotgun pleading. Alternatively, Defendants respectfully request that the Court enter an Order: (1) dismissing Defendant CPL from the lawsuit entirely for lack of personal jurisdiction; (2) dismissing Plaintiff's First Cause of Action for Sex Trafficking under 18 U.S.C. Section 1595 with prejudice for failure to state a claim; (3) dismissing Plaintiff's Third Cause of Action for Rape under California Penal Code

Section 261(4)(D) with prejudice for failure to state a claim; and (4) striking the allegations in Paragraphs 29-38 and 118.

Dated: August 16, 2024          VENABLE LLP

By   /s/  Desirée F. Moore
     Desirée F. Moore
     Joshua M. Rosenberg
     Rachel C. Richards
     Kaidyn P. McClure

*Attorneys for Defendants Terius Gesteelde-Diamant and Contra Paris, LLC*

DEFENDANTS' MOTION TO DISMISS AND
MOTION TO STRIKE COMPLAINT

## **CERTIFICATE OF COMPLIANCE WITH RULE 11-6.1**

I, Desirée F. Moore, counsel for Defendants Terius Gesteelde-Diamant p/k/a "The-Dream" and Contra Paris, LLC (collectively, "Defendants") hereby certify that, according to the word-count tool in Microsoft Word, the Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss and to Strike consists of 6,969 words, including footnotes and excluding this certificate of compliance and the sections enumerated by Rule 11-6.1. The Memorandum of Points and Authorities therefore complies with Rule 11-6.1.

Dated: August 16, 2024                VENABLE LLP

By      */s/ Desirée F. Moore*
          Desirée F. Moore
          Joshua M. Rosenberg
          Rachel C. Richards
          Kaidyn P. McClure

*Attorneys for Defendants Terius Gesteelde-Diamant and Contra Paris, LLC*

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

-1-

Case No. 2:24-cv-04639-SPG-PVC          DEFENDANTS' MOTION TO DISMISS AND
                                        MOTION TO STRIKE COMPLAINT