GIBSON, DUNN & CRUTCHER LLP
Debra Wong Yang SBN 123289
  DWongYang@gibsondunn.com
Bradley J. Hamburger SBN 266916
  BHamburger@gibsondunn.com
Summer A. Wall SBN 331303
  SWall@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Tel: 213.229.7472

Kristin A. Linsley SBN 154148
  KLinsley@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Tel: 415.393.8395

*Attorneys for Defendant*
SONY MUSIC ENTERTAINMENT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHANAAZ MANGROE p/k/a Channii Monroe,<br><br>Plaintiff,<br><br>v.<br><br>TERIUS GESTEELDE-DIAMANT p/k/a "THE-DREAM"; CONTRA PARIS, LLC; and SONY MUSIC ENTERTAINMENT,<br><br>Defendants. | CASE NO. 2:24-CV-04639-SPG-PVG<br><br>**REPLY IN SUPPORT OF MOTION BY DEFENDANT SONY MUSIC ENTERTAINMENT TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**Hearing**:<br>Date: January 29, 2024<br>Time: 1:30 p.m.<br>Place: Courtroom 5C<br>Judge: Hon. Sherrilyn Peace Garnett |

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................... 1

II.   ARGUMENT ........................................................................................... 4

    A.    Dream's Conduct Did Not Violate Federal Criminal Sex Trafficking
        Laws ............................................................................................... 4

        1.    No Plausible Allegations of a Commercial Sex Act ........................... 4

        2.    No Plausible Allegations of Dream's Criminal Scienter .................. 7

    B.    Plaintiff Fails to Establish Any Claim Against SME Under § 1595 ............. 8

        1.    No Plausible Allegations That SME Had Actual or
            Constructive Knowledge of Sex Trafficking ..................................... 8

        2.    No Plausible Allegations That SME Knowingly Participated
            in a Sex-Trafficking Venture .......................................................... 11

        3.    No Plausible Allegations of Any Benefit to SME ........................... 14

III.  CONCLUSION ..................................................................................... 15

Gibson, Dunn &
Crutcher LLP

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*A.B. v. Hilton Worldwide Holdings Inc.*,
   484 F. Supp. 3d 921 (D. Or. 2020) ................................................................. 9

4

*A.B. v. Marriott Int'l, Inc.*,
   455 F. Supp. 3d 171 (E.D. Pa. 2020) ........................................................... 10

5

6

*A.B. v. Shilo Inn, Salem, LLC*,
   2023 WL 5237714 (D. Or. Aug. 15, 2023) ...................................................... 9

7

*A.B. v. Wyndham Hot. & Res., Inc.*,
   532 F. Supp. 3d 1018 (D. Or. 2021) ............................................................ 13

8

9

*Ardolf v. Weber*,
   332 F.R.D. 467 (S.D.N.Y. 2019) .................................................................. 10

10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................ 8

11

12

*Crandon v. U.S.*,
   494 U.S. 152 (1990) ........................................................................................ 4

13

*CTS Corp. v. Waldburger*,
   573 U.S. 1 (2014) ............................................................................................ 4

14

15

*Doe #1 v. Red Roof Inns, Inc.*,
   21 F.4th 714 (11th Cir. 2021) ................................................... 8, 11, 12, 14

16

*Doe 1 v. Deutsche Bank Akt.*,
   671 F. Supp. 3d 387 (S.D.N.Y. 2023) ......................................................... 10

17

18

*Doe v. Apple, Inc.*,
   96 F.4th 403 (D.C. Cir. 2024) ...................................................................... 11

19

*Doe v. Fitzgerald*,
   2022 WL 2784805 (C.D. Cal. May 13, 2022) ......................................... 6, 7, 8

20

21

*Doe (S.M.A.) v. Salesforce, Inc.*,
   2024 WL 1337370 (N.D. Tex. Mar. 28, 2024) ............................. 8, 9, 13, 14

22

*Does 1-6 v. Reddit, Inc.*,
   51 F.4th 1137 (9th Cir. 2022) ......................................................... 3, 12, 13

23

24

*E.S. v. Best W. Int'l.*,
   510 F. Supp. 3d 420 (N.D. Tex. 2021) ........................................................ 13

25

*Eckhart v. Fox News Ntw.*,
   2021 WL 4124616 (S.D.N.Y. Sept. 9, 2021) ............................................... 7, 9

26

27

*Fan v. Jiang*,
   2024 WL 4987251 (9th Cir. Dec. 5, 2024) ..................................................... 7

28

Gibson, Dunn &
Crutcher LLP

*G.G. v. Salesforce.com, Inc.*,
   76 F.4th 544 (7th Cir. 2023) ....................................................... 13, 14

*Geiss v. Weinstein Holdings LLC*,
   383 F. Supp. 3d 156 (S.D.N.Y. 2019) ............................................. 12

*J.B. v. G6 Hosp., LLC*,
   2020 WL 4901196 (N.D. Cal. Aug. 20, 2020) ............................. 9, 13

*J.B. v. G6 Hosp., LLC*,
   2021 WL 4079207 (N.D. Cal. Sept. 8, 2021) ................................... 4

*M.A. v. Wyndham Hot. & Res., Inc.*,
   425 F. Supp. 3d 959 (S.D. Ohio 2019) ........................................... 11

*Martinez v. 189 Chrystie St. Part., LP*,
   2023 WL 5390442 (S.D.N.Y. Aug. 22, 2023) ................................. 10

*Noble v. Weinstein*,
   335 F. Supp. 3d 504 (S.D.N.Y. 2018) ........................................ 6, 12

*Ramsbottom v. Ashton*,
   2024 WL 4993391 (M.D. Tenn. Dec. 5, 2024) ........................... 9, 12

*Ratha v. Phatthana Seafood Co.*,
   35 F.4th 1159 (9th Cir. 2022) ......................................................... 15

*Ratha v. Rubicon Res., LLC*,
   111 F.4th 946 (9th Cir. 2024) ......................................................... 15

*Roberts v. eXp Realty, LLC*,
   2024 WL 3005892 (C.D. Cal. May 23, 2024) ................................ 15

*S.C. v. Hilton Franchise Holding LLC*,
   2024 WL 4773981 (D. Nev. Nov. 12, 2024) ................................... 14

*U.S. v. Todd*,
   627 F.3d 329 (9th Cir. 2010) ................................................... 2, 6, 7

*U.S. v. Andrews*,
   2022 WL 9466146 (E.D. Cal. Oct. 14, 2022) ................................... 7

*U.S. v. Bazar*,
   747 F. App'x 454 (9th Cir. 2018) ..................................................... 6

*U.S. v. Mondaca*,
   2024 WL 4274703 (9th Cir. Sept. 24, 2024) ................................ 2, 7

*U.S. v. Morrison*,
   529 U.S. 598 (2000) ......................................................................... 6

*U.S. v. Pepe*,
   895 F.3d 679 (9th Cir. 2018) ........................................................... 5

*U.S. v. Raniere*,
   55 F.4th 354 (2d Cir. 2022) ............................................................. 5

iv

*U.S. v. Reed*,
   2017 WL 3208458 (D.D.C. 2017) ........................................................................ 5

*U.S. v. Stackhouse*,
   105 F.4th 1193 (9th Cir. 2024) ........................................................................ 7

*U.S. v. Taylor*,
   44 F.4th 779 (8th Cir. 2022) ........................................................................ 10

*U.S. v. Walls*,
   784 F.3d 543 (9th Cir. 2015) ........................................................... 2, 4, 5, 6

*U.S. v. Afyare*,
   632 F. App'x 272 (6th Cir. 2016) .................................................................. 12

**Statutes**

18 U.S.C. §1591 ............................................................................................ 2, 7

18 U.S.C. §1595 .......................................................................................... 11, 15

18 U.S.C. § 2423 ............................................................................................... 5

**Other Authorities**

Black's Law Dictionary (8th ed. 2004) ......................................................... 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.  INTRODUCTION

Plaintiff seeks to hold SME liable for allegedly participating in a sex-trafficking "venture" associated with Dream, but as her opposition confirms, the complaint fails to allege any such "venture," any act by such a "venture" constituting criminal sex trafficking under 18 U.S.C. § 1591, or, most importantly, any facts that could conceivably make SME secondarily liable under the civil remedies provision of 18 U.S.C. § 1595.  What Plaintiff does allege is that (1) she entered into a months-long sexual relationship with Dream, motivated in part by his assurances of immigration assistance and a recording deal; (2) those promises were largely fulfilled, including through the execution of a recording agreement between Plaintiff and Dream's company, Contra Paris, LLC, and Contra's separate, arms-length agreement with SME to distribute Plaintiff's music; (3) the relationship between Plaintiff and Dream became increasingly abusive, with Dream using controlling behavior and ultimately preventing Plaintiff from completing recordings; and (4) well after the SME/Contra contract was signed, some SME employees witnessed behavior and correspondence between Plaintiff and Dream that suggested more than a professional relationship, Plaintiff told one SME employee that Dream was abusive toward her, and SME knew that Plaintiff did not complete her planned music recordings.  None of these facts shows sex trafficking, much less SME's culpable participation in a venture that it knew or should have known violated the federal criminal sex trafficking statute.

At its core, Plaintiff's liability theory against SME is fundamentally implausible and speculative.  She claims that Dream never intended to help her career, and that SME knowingly "participated" in Dream's trafficking scheme.  But SME could not have "played along" with Dream's alleged scheme until after it purportedly learned of his alleged misconduct, and on Plaintiff's own telling, no one at SME knew anything about any sexual relationship or abuse until well after the SME/Contra contract was signed.  SME's lack of knowledge at the outset of the SME/Contra contract means that it was presumptively pursuing its own economic self-interest by signing the distribution deal and hoping Plaintiff would deliver music that would be commercially successful so it could recoup the hundreds of

REPLY ISO MOTION BY DEFENDANT SONY TO DISMISS COMPLAINT, CASE NO. 2:24-CV-04639-SPG

thousands of dollars it invested. Faced with this timing problem, Plaintiff theorizes that, when SME did learn of Dream's abuse, it made the economically irrational decision to acquiesce in his alleged scheme and no longer require delivery of Plaintiff's music—thus forfeiting its sizeable investment—all because it wanted to "solidify" a relationship with Dream and benefit from his connection to Beyoncé, who *already* was an SME artist. None of this illogical narrative makes sense or finds any support in the facts alleged in the complaint.

Apart from these problems with Plaintiff's overarching theory, the opposition confirms that she has not alleged facts sufficient to establish any of the essential elements of her claims:

***No plausible allegations of a commercial sex act***. Plaintiff does not allege that she or anyone else received compensation in exchange for any sex act. Her allegation that she began a sexual relationship with Dream based on his "promises of a music career and fame" does not establish the required exchange of sex for "commercial gain." *U.S. v. Walls*, 784 F.3d 543, 546 (9th Cir. 2015). And her counterintuitive definition of "commercial sex act" to require no economic element is barred by Ninth Circuit law and would improperly extend the federal criminal trafficking laws to conduct unrelated to commercial sex or trafficking.

***No plausible allegations that Dream acted with the requisite scienter.*** To establish the predicate sex trafficking offense for a § 1595 claim, Plaintiff must plausibly allege that Dream "[knew]" "that means of force, threats of force, fraud, coercion, or any combination of such means will be used to cause [Plaintiff] to engage in a commercial sex act." 18 U.S.C. § 1591(a)(1)-(2). Under Ninth Circuit law, the forward-looking phrase "will be used" means that, at the time of victim's enticement, the perpetrator must know that force or coercion will be used (by the perpetrator or someone else) to cause that person to engage in commercial sex. In other words, the perpetrator must have had "awareness" at the time of enticement/recruitment "of an established modus operandi" directed toward such trafficking. *U.S. v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010); *see also U.S. v. Mondaca*, 2024 WL 4274703, at *1 (9th Cir. Sept. 24, 2024). Plaintiff fails to establish this element because she alleges no facts showing a pattern by Dream of defrauding or forcing victims into commercial sex acts.

***No plausible allegation that SME knowingly participated in a criminal trafficking***

2

*venture.*  Even if Plaintiff could allege criminal trafficking by Dream, she alleges no facts showing that SME knowingly benefited from culpable participation in any "venture" at a time when it knew or should have known that the venture criminally trafficked Plaintiff. Plaintiff never clearly identifies the relevant criminal "venture" in which SME allegedly participated—all she alleges is a business deal (the SME/Contra contract) between two commercial parties; cash advances under that contract against future record sales; and meetings with Plaintiff and representatives of Contra; and that *after* the contract was signed and the advances paid, some SME employees allegedly witnessed signs of an abusive sexual relationship between Plaintiff and Dream.  None of this shows SME's actual or constructive knowledge of a sex-trafficking venture, much less "affirmative conduct furthering the sex-trafficking venture," as the statute requires.  *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022).  To the contrary, Plaintiff's admission that SME was unaware of any sexual relationship when it signed the SME/Contra contract means that the contract itself cannot be the trafficking "venture."  And nothing about SME's later actions turn the contract into, or constitute "participation" in, a sex-trafficking venture.  Those actions—attending a recording session, working with the production company and its artist, and not intervening to prevent harassing behavior—all are consistent with the role of distributor and certainly do not establish that SME "actually 'engaged in some aspect of the sex trafficking'" for purposes of the "participation" element.  *Id*.  The SME/Contra contract was an arms-length contract between two commercial parties, and Plaintiff cites *no* case finding liability based on a one-off, arms-length contract with no tie to any sex trafficking.

***No plausible allegations of any knowing benefit to SME.***  Plaintiff concedes that SME gained no financial benefit from the SME/Contra contract, and her claim that SME gained a noneconomic benefit by starting a relationship with Dream, who in turn had ties to Beyoncé, is both unsupported by the alleged facts and nonsensical.  Given that Beyoncé was signed to SME already, it makes no sense to infer that SME would improve its existing relationship with her by working with *another* artist through Dream's company—much less by helping Dream victimize that artist via a sex-trafficking venture.  This is simply irrational speculation.

3

1    For all these reasons, the Court should dismiss the complaint with prejudice.

2                                    **II. ARGUMENT**

3    Plaintiff asserts (Opp. 6) that the TVPRA is a "remedial" statute and thus should be

4    construed "liberally," but this maxim is not a "substitute for a conclusion grounded in the

5    statute's text and structure." *CTS Corp. v. Waldburger*, 573 U.S. 1, 12 (2014). For that

6    reason, courts in this circuit have correctly rejected "remedial" analyses untethered from

7    the "plain language" of a statute. *See, e.g., J.B. v. G6 Hospitality, LLC*, 2021 WL

8    4079207, at *6 (N.D. Cal. Sept. 8, 2021). And here, the fact that Plaintiff's civil claim

9    against SME turns on federal criminal laws means the opposite rule applies, as ambiguities

10   in a criminal statute—even where only civil liability is at issue—must be read in favor of

11   the defendant. *Crandon v. U.S.*, 494 U.S. 152, 158 (1990). As shown below, Plaintiff has

12   no viable claim against SME under any reading of the applicable statutes.

13   **A.    Dream's Conduct Did Not Violate Federal Criminal Sex Trafficking Laws**

14   To allege a § 1595 claim against SME, Plaintiff must first show that Dream violated

15   the federal criminal sex trafficking statute. Because the opposition confirms the absence of

16   any plausible allegations showing such a violation, the claim against SME necessarily fails.

17        **1.    No Plausible Allegations of a Commercial Sex Act**

18   Plaintiff's claim fails at the threshold because she alleges no facts showing Dream

19   forced or defrauded her into a "commercial sex act." This element requires a sex act

20   performed "on account of" an economic or financial benefit—that is, an exchange of a sex

21   act for economic gain. See *Walls*, 784 F.3d at 546. Plaintiff does not argue or allege that she

22   or anyone else was paid money in exchange for her performance of any sex act. Instead, she

23   relies on three alleged "benefits," but none meets the statutory definition.

24   ***First***, Plaintiff points to SME's cash advances to Contra and Plaintiff against future

25   royalties—both of which she alleges were made upon execution of the SME/Contra contract

26   "for the services of" Plaintiff *to create musical recordings*. FAC ¶¶ 185, 197. Nothing in

27   the complaint remotely suggests that the payments were made in exchange for sexual

28   services of any kind. On the contrary, Plaintiff admits that SME had no reason to suspect

4

1    she and Dream were even involved in a sexual relationship until after the contract was

2    executed and the payments were made.  *Id*. ¶¶ 184, 190, 192, 197; Mot. 5-6.  Although

3    Plaintiff suggests (Opp. 9-10) that the "'thing of value'" under § 1591 need not "be given

4    'solely' on account of the sex act," the statutory term "on account of" requires a specific

5    causal connection, as Plaintiff's cases show.  In *U.S. v. Raniere*, the Second Circuit

6    approved a jury instruction defining a commercial sex act as "any sex act of which anything

7    of value is given to or received by any person *because of such sex act*"—capturing the

8    statutory requirement that the alleged benefit be given "on account of" the sex act.  55 F.4th

9    354, 363 (2d Cir. 2022).  And Plaintiff's claim fails even under her own proposed test, as

10    she alleges nothing suggesting that SME made these payments even *partially* in exchange

11    for any sex act.  Although she argues (Opp. 10) that the payments ensured she would be

12    "available to Dream whenever he demanded sex," she alleges nothing linking this purpose

13    to SME and admits that the payments were actually cash advances, FAC ¶¶ 197, 211, 235,

14    meaning advances against future royalties—not payments "*on account of*" sex acts.

15    **_Second_**, Plaintiff suggests that her entire relationship with Dream was "commercial

16    sex" because he induced her into the relationship through assurances of career advancement.

17    But under Ninth Circuit law, these non-economic assurances do not turn general sexual

18    activity into a "commercial sex act."[1]  Section 1591 specifically requires that the enticement

19    to a commercial sex act occur "in or affecting interstate … commerce," and the Ninth Circuit

20    has made clear that the TVPRA is part of a statutory scheme that criminalizes trafficking "for

21    commercial gain."  *Walls*, 784 F.3d at 548.  Because the TVPRA "deals with commerce

22    within the power of Congress to regulate," the commercial connection through the "interstate

---

[1]  Plaintiff's attempt to extend the TVPRA to non-economic contexts would improperly extend the criminal statutory scheme to conduct that is not sex trafficking.  18 U.S.C. § 2423 criminalizes both commercial illicit sex acts and illicit sex acts with "no economic component."  *U.S. v. Pepe*, 895 F.3d 679, 684 n.3 (9th Cir. 2018).  The provisions that carry an "economic component" manifest that intent by incorporating § 1591's "commercial sex act" definition.  *Id.*; *see* 18 U.S.C. § 2423(b)-(e), (g); *U.S. v. Clark*, 435 F.3d 1100, 1115 (9th Cir. 2006).  Because Congress's use of § 1591's "commercial sex act" definition shows an intent to "regulate[] an economic activity," courts have rejected unconstitutional applications seeking to regulate "noneconomic, violent criminal conduct."  *U.S. v. Reed*, 2017 WL 3208458, at *9-10, 19 (D.D.C. 2017).

commerce" element is essential to the validity of the statutory scheme. *Todd*, 627 F.3d at 330-31, 333; *accord Walls*, 784 F.3d at 548-49. This commercial focus sets § 1591 apart from laws about sex crimes involving *no* economic activity, like the Violence Against Women Act that the Supreme Court held was beyond Congress's commerce power in *U.S. v. Morrison*, 529 U.S. 598, 611 (2000). *See Todd*, 627 F.3d at 333.

Plaintiff cites a series of cases (Opp. 7-8) for the proposition that no economic component is needed and "intangible promises of future jobs" are enough. That is not the law in the Ninth Circuit, and Plaintiff's cases also establish nothing of the kind. In *Doe v. Fitzgerald*, 2022 WL 2784805 (C.D. Cal. May 13, 2022), the perpetrator met the "commercial sex act" element by paying one plaintiff "$200 and clothing" "for the sex acts." *Id.* at *3. That was not the case for another plaintiff who was offered free rent, among other things, because these benefits were "not offered in exchange for a sex act." *Id.* at *5. In *U.S. v. Bazar*, the trafficking scheme centered on the *payment of money* by massage clients for sexual services—the only question was whether a "commercial sex act" requires sexual *intercourse* (the court held it does not). 747 F. App'x 454, 456 (9th Cir. 2018). Plaintiff characterizes certain out-of-circuit cases—mainly the Weinstein cases—as holding that commercial sex requires no "monetary or financial component," but that would conflict with Ninth Circuit law, *see Todd*, 627 F.3d at 330-31, and are not like this case, as they involved specific forced sex acts exchanged for specific career promises or benefits, *e.g.*, *Noble v. Weinstein*, 335 F. Supp. 3d 504, 522-23 (S.D.N.Y. 2018)—not, as here, a months-long romantic and sexual relationship that allegedly turned abusive and where, unlike in the Weinstein cases, there was an actual talent deal: Plaintiff gave valuable consideration other than sex, namely her exclusive services as a recording artist; she received bargained-for consideration, namely a $35,000 advance and the right to future royalties; Dream and Contra delivered the promised career assistance by securing the SME deal; and Dream and Contra were paid for that assistance through advances and rights to future payments.

**Third**, Plaintiff points to allegations of other "things of value," including studio time to record music and "money for food and shelter." Opp. 8. But she alleges no facts showing

6

that these claimed benefits—all of which were necessary to enable her to produce the music that Contra was obliged to deliver—were provided in exchange for any sex act, as the statute requires, *Fitzgerald*, 2022 WL 2784805, at *6, so this theory fails as well.

### 2.    No Plausible Allegations of Dream's Criminal Scienter

Section 1591 makes it a crime to "knowingly … recruit[]" or "entice[]" a person while "knowing … that means of force, fraud, coercion ... *will be used* to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a)(1)-(2) (emphasis added). Plaintiff would have this Court ignore this text and Ninth Circuit law, both of which require *advance knowledge* that a person will be forced or defrauded into commercial sex. Specifically, § 1591 requires "that the defendant *know* in the sense of being aware of an *established modus operandi* that will in the future cause a person to engage in" commercial sex. *Mondaca*, 2024 WL 4274703, at *1 (citing *Todd*, 627 F.3d at 334).

Plaintiff's argument (Opp. 11) that § 1591 does not require "evidence of the sex trafficking of a prior victim" is irrelevant. What § 1591 and Ninth Circuit law do require— and what is not alleged—is that the perpetrator, at the initial recruitment or enticement stage, was aware of a *pattern of conduct* through which the victim would be caused to engage in commercial sex. *Todd*, 627 F.3d at 334; *Mondaca*, 2024 WL 4274703, at *1; *see* Mot. 13-15. The established modus operandi, or pattern of conduct, is how the requisite future-looking scienter requirement is met. *See id.*; *cf. U.S. v. Stackhouse*, 105 F.4th 1193, 1204 (9th Cir. 2024). Mere allegations of abusive conduct do not suffice. *Fan v. Jiang*, 2024 WL 4987251, at *1 (9th Cir. Dec. 5, 2024).

Plaintiff's opposition confirms that she cannot meet this element.[2] She claims (Opp. 11) that Dream defrauded her through "false promises" and "never actually ha[d] any intention" to support her career. But these conclusory allegations of Dream's supposed

---

[2] Plaintiff's two cases are unpersuasive. In *U.S. v. Andrews*, the court held that the defendant's *pattern of conduct* supported his conviction. 2022 WL 9466146, at *2-3 (E.D. Cal. Oct. 14, 2022). *Eckhart v. Fox News Ntw.* contradicts Ninth Circuit law and, unlike here, involved facts showing that the defendant intended at the time of enticement to force the plaintiff into commercial sex. 2021 WL 4124616, at *10-11 (S.D.N.Y. Sept. 9, 2021).

intent show neither an "established modus operandi" nor any other plausible facts sufficient to establish that Dream was aware at the time he "enticed" or "recruited" Plaintiff that she would be defrauded or coerced into commercial sex.  Her allegations actually show the opposite—that Dream *did* try to develop her work, including by procuring a contract with SME, and resolving her visa issue.  Opp. 16; Mot. 14-15.  Although she claims Contra was merely an "illegitimate business to assist Dream in his trafficking scheme" (Opp. 12), she admits that it distributed albums nationwide (FAC ¶ 18) and nowhere asserts that Dream, contrary to any alleged promise, did *not* work on radio edits of her songs or was *not* actually planning her first showcase for the label.

## B.    Plaintiff Fails to Establish Any Claim Against SME Under § 1595

Apart from Plaintiff's failure to allege a primary violation of § 1591, she fails to allege anything that comes close to supporting secondary liability against SME under § 1595—namely, that SME actively and knowingly participated in a sex-trafficking venture at a time when it knew or should have known that the venture violated criminal sex trafficking laws. *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021); *Fitzgerald*, 2022 WL 2784805, at *4; *Doe (S.M.A.) v. Salesforce, Inc.*, 2024 WL 1337370, at *16 (N.D. Tex. Mar. 28, 2024).  Rather than pointing to facts that support those elements, she asks the Court to rewrite the statutory text defining them.  The Court should decline the invitation.

### 1.    No Plausible Allegations That SME Had Actual or Constructive Knowledge of Sex Trafficking

Tacitly admitting the weakness of her factual allegations on SME's knowledge, Plaintiff contends (Opp. 14) that knowledge "may be alleged generally" under Rule 9(b).  But Rule 9(b) grants no "license to evade" Rule 8's plausibility standard, even as to knowledge. *Ashcroft v. Iqbal*, 556 U.S. 662, 686-87 (2009).  And Plaintiff alleges no facts, either generally or specifically, showing that SME knew or should have known that any "venture" in which it knowingly participated was engaged in criminal sex-trafficking of Plaintiff.  This failure is dispositive as, absent such knowledge, the claim against SME fails.

Plaintiff's arguments about SME's intent are confusing and self-contradictory.  She

cites (Opp. 15) a handful of instances where, after the SME/Contra contract was signed and SME had paid the advances, SME employees allegedly witnessed conduct or communications suggesting a romantic or sexual relationship between Plaintiff and Dream, including later indications that Dream was abusive in that relationship. But none of this equates to knowledge—either actual or constructive—that any venture in which SME knowingly participated would cause Plaintiff to engage in commercial sex through force, fraud, or coercion. *Cf. Doe*, 2024 WL 1337370, at *17 (even knowledge of commercial sex does not constitute knowledge of actual trafficking, *i.e.*, commercial sex caused by force, fraud, or coercion). Plaintiff does not dispute that the supposed "red flags" she cites all occurred *after* the SME/Contra contract was signed, and *after* SME had met its obligation to provide the recording funds under the contract. There is no factual support whatsoever for Plaintiff's supposition (Opp. 18), that SME must have had relevant knowledge at the outset that it was somehow investing in a sex-trafficking operation.

Plaintiff claims (Opp. 18, 20) that her allegations about Dream's "publicized record of domestic violence" are "alone" sufficient to show SME's constructive knowledge, but this is patently insufficient, given that no prior relationship between SME and Dream is alleged, and "domestic violence" or other criminal activity is not the same thing as sex trafficking. *See A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 938 (D. Or. 2020); *A.B. v. Shilo Inn, Salem, LLC*, 2023 WL 5237714, at *6 (D. Or. Aug. 15, 2023).

Nor can allegations about alleged incidents *after* execution of the SME/Contra contract and *after* SME's payments provide the requisite knowledge. Knowledge of sex abuse or abusive conduct does not create a plausible inference of trafficking. In *Eckhart*, the court dismissed a § 1595 claim against Fox News alleging sex trafficking by one of its anchors, holding that the allegations suggested knowledge of "inappropriate sexual misconduct" but not actual or constructive knowledge that he was "using force or fraud to obtain a commercial sex act" from any person. 2021 WL 4124616, at *11; *accord J.B v. G6 Hosp., LLC*, 2020 WL 4901196, at *10 (N.D. Cal. Aug. 20, 2020); *Ramsbottom v. Ashton*, 2024 WL 4993391, at *16 (M.D. Tenn. Dec. 5, 2024) (participation in a perpetrator's business activities is not

9

1   constructive knowledge of sex trafficking).  This makes sense, as the TVPRA "does not
2   impose liability for sexual assault," which is a "classic state crime."  *Doe 1 v. Deutsche Bank*
3   *Akt.*, 671 F. Supp. 3d 387, 410 (S.D.N.Y. 2023).

4        Plaintiff claims that SME should have known that Dream was defrauding or coercing
5   her into commercial sex because it knew that Contra did not deliver recordings of her music.
6   She argues (Opp. 19-20) that her expressed willingness to produce the music, Dream's "well
7   publicized domestic violence arrests, and SME executives' knowledge of Dream's abuse"
8   create "an inference" that SME knew that her contract "was simply part of a fraudulent
9   scheme that Dream was using to elicit sexual acts."  As to coercion, she argues that the same
10  failure to deliver music, along with SME's alleged knowledge of Dream's support of her
11  work visa and his "physical and sexual violence," establishes constructive knowledge of
12  coercive sex trafficking.  But even if Contra missed a deadline to provide the music—which
13  Plaintiff does not allege—knowledge by a contractual counterparty that a music producer
14  failed to deliver recordings is not knowledge of fraud or coercion, and no such inference can
15  be created by the hodgepodge of allegations regarding publicity about "domestic violence"
16  by the producer, an allegedly abusive relationship with the artist, or an undertaking to support
17  a work visa.  There is simply nothing connecting these allegations to knowledge—whether
18  actual or constructive—of any sex trafficking.

19       Plaintiff's cases support SME.  In many, the defendants had actual knowledge of
20  trafficking because they were the direct perpetrators, and in others, knowledge was imputed
21  to corporate employers—there were no third-party beneficiary liability defendants.  *Martinez*
22  *v. 189 Chrystie St. Part., LP*, 2023 WL 5390442, at *4-5 (S.D.N.Y. Aug. 22, 2023); *Ardolf*
23  *v. Weber*, 332 F.R.D. 467, 475 (S.D.N.Y. 2019); *U.S. v. Taylor*, 44 F.4th 779, 790 (8th Cir.
24  2022).  The rest involve hotel defendants that not only had constructive knowledge of specific
25  commercial sex acts on their premises, but *also* knew that the plaintiffs were forced or
26  defrauded into engaging in commercial sex—including seeing altercations in hotel rooms,
27  hearing pleas to hotel staff for help, and seeing visible injuries on the victims.  *A.B. v. Marriott*
28  *Int'l, Inc.* 455 F. Supp. 3d 171, 193 (E.D. Pa. 2020); *M.A. v. Wyndham Hot. & Res., Inc.*, 425

REPLY ISO MOTION BY DEFENDANT SONY TO DISMISS COMPLAINT, CASE NO. 2:24-CV-04639-SPG

F. Supp. 3d 959, 967 (S.D. Ohio 2019). Plaintiff alleges nothing like that.

In the end, Plaintiff's knowledge theory is factually unsupported and makes no sense. Apart from her utter failure to allege facts suggesting such knowledge of even commercial sex, it is not plausible that SME would knowingly advance large sums of money to distribute an artist's work if it knew that the entire arrangement was part of a fraudulent sex-trafficking scheme and no music would ever be produced. Plaintiff's claim fails on this basis alone.

## 2. No Plausible Allegations That SME Knowingly Participated in a Sex-Trafficking Venture

Plaintiff's § 1595 claim also fails for want of any plausible allegation that SME culpably participated in any venture that it knew or should have known engaged in criminal sex trafficking. As an initial matter, Plaintiff never clearly identifies or defines the "venture" in which SME allegedly participated, and the law is clear that such a "venture" must be the *same* "venture" that committed the alleged criminal sex-trafficking violation against the plaintiff: The statute refers to "whoever knowingly benefits … from participation in a venture which that person knew or should have known has engaged in a violation of this chapter." 18 U.S.C. § 1595(a). Because "venture" is not defined, courts look to the term's ordinary meaning, including "a business enterprise involving some risk in expectation of gain." *Doe v. Apple, Inc.*, 96 F.4th 403, 414-15 (D.C. Cir. 2024); *accord Doe #1*, 21 F.4th at 725.

Here, the only alleged engagement by SME that looks like any kind of "venture" was the SME/Contra contract, *see* FAC ¶ 185, but that was for the commercial purpose of having Contra provide SME music performed by Plaintiff, and she does not claim that it somehow constituted a *sex-trafficking* venture unto itself. *See* Mot. 19-20. *Doe #1* is similar: the Eleventh Circuit affirmed dismissal of a § 1595 claim because there was no "common undertaking or enterprise" between the defendant hotel franchisors and the traffickers who violated § 1591. 21 F.4th at 726-27. SME's only business dealings were with Contra, *see* FAC ¶ 185—Plaintiff does not allege that SME ever had a business relationship directly or personally with Dream. And Dream's "knowledge of his own (alleged) trafficking activities does not provide a legal basis for attributing liability for those activities to his business" as

11

a type of "inverse veil-piercing." *Ramsbottom*, 2024 WL 4993391, at \*16.

Even if Plaintiff's allegations show a *business* venture between SME and Dream, she still does not allege facts constituting culpable participation in a *sex trafficking* venture. Although courts have differed on what constitutes "participation," the Ninth Circuit has indicated that *some participation in the actual trafficking is required*. In *Reddit, Inc.*, 51 F.4th at 1145, the court followed decisions holding that, for beneficiary liability under § 1595, a plaintiff "must allege some 'specific conduct [by the defendant] that furthered the sex trafficking venture," *id.* (citing *Noble*, 335 F. Supp. 3d at 524)—a showing that requires "actual knowledge and 'a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit,'" *id.* (quoting *Geiss v. Weinstein Hold. LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019)). The court also quoted with approval the holding in *U.S. v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016), that "participation" in a trafficking venture means "the defendant must have actually 'engaged in some aspect of the sex trafficking,'" not just "'turned a blind eye to the source of their [revenue].'" 51 F.4th at 1145. Although the focus in *Reddit* was on "participation" under § 1591, the Ninth Circuit clearly approved these precedents interpreting the same term in § 1595.[3] And the Eleventh Circuit adopted the same analysis as *Reddit* for § 1595 cases. *Doe #1*, 21 F.4th at 725.

Plaintiff does not even try to allege facts suggesting that SME participated in the abuse she allegedly suffered in her relationship with Dream, much less "'specific conduct [by SME] that furthered the sex trafficking venture, undertaken with knowledge' of the venture." *Reddit*, 51 F.4th at 1145. Although she claims (Opp. 19, 21) that SME "directly participated in the venture between [Plaintiff], SME, and Contra" through its cash advances while doing "nothing to intervene" in response to her "reports of abuse and Dream's refusal to allow her to honor her SME contract," her admission that that SME was unaware of

---

[3] *Afyare* also involved the criminal statute, *Reddit*, 51 F.4th at 1145, but at the time *Afyare* was decided, the term "participation" was not defined in either statute, so its reading would naturally apply in the civil context. And although *Reddit* itself involved the recently enacted criminal definition of "participation," its approval of prior civil precedent confirms that its analysis would apply to § 1595 as to what it means to "participate" in a sex-trafficking venture (as distinguished from the requisite scienter).

Dream's alleged conduct when the advances were paid and her failure to allege actual involvement in any culpable behavior refute this theory. The claim fails as a matter of law because there is no "specific" or "affirmative" conduct furthering a sex trafficking venture, much less one "'undertaken with knowledge'" of trafficking by the venture, as distinguished from allegedly turning "a blind eye" toward abusive conduct. *Reddit*, 51 F.4th at 1145.

Even under the more lenient "participation" standard that Plaintiff urges (Opp. 20-21), her claim fails. Her cited cases make clear that there must be a "direct association" in the form of "a continuous business relationship between the trafficker" and the defendant such that it would appear that they "have established a pattern of conduct" or "have a tacit agreement" regarding the trafficking. *J.B.*, 2020 WL 4901196, at *9; *see also* Mot. 19-20 n.3. Nonfeasance in the face of criminal activity (Opp. 15, 19) is not enough. *A.B. v. Wyndham Hot. & Res., Inc.*, 532 F. Supp. 3d 1018, 1027 (D. Or. 2021); *E.S. v. Best W. Int'l.*, 510 F. Supp. 3d 420 (N.D. Tex. 2021).

Plaintiff's claim fails on all these grounds. There are no facts suggesting a "pattern of conduct" or "tacit agreement" as to trafficking—a test that requires that the beneficiary defendant have "an ongoing interest in the success of a specific venture" such that it would "elect to further [its] ends" "beyond what would reasonably be expected in an ordinary commercial transaction." *Doe*, 2021 WL 1337370, at *13-14. The SME/Contra contract was definitionally an "ordinary" transaction: SME paid for the right to distribute music created by Plaintiff and produced by Contra, and nothing more.

*G.G. v. Salesforce.com, Inc.*, 76 F.4th 544 (7th Cir. 2023), does not hold otherwise. The *G.G.* plaintiff claimed she was trafficked on Backpage's classifieds website and that Salesforce helped Backpage build a trafficking business through a long-term business contract, including "targeted solutions addressed to the specific needs of Backpage's business," and "active, ongoing support … tailored to those needs." *Id.* at 549-50, 559-64. As the court put it, Salesforce "was in a direct, prolonged, and supportive contractual relationship with one of [the plaintiff's] sex traffickers—Backpage." *Id.* at 561. Plaintiff's other cases (Opp. 21), confirm that a "continuous business relationship" requires far more

13

than a commercial contract.  *See, e.g.*, *S.C. v. Hilton Franchise Holding LLC*, 2024 WL 4773981, at \*4 (D. Nev. Nov. 12, 2024).

Plaintiff's allegations are nothing like those cases.  SME and Contra signed a one-time distribution agreement for Plaintiff's music, not "several lucrative contracts" with "targeted solutions" for growing a trafficking business.  *G.G.*, 76 F.4th at 560-61.  SME employees interacted with Plaintiff and Dream a handful of times over about a year, in meetings that "would reasonably be expected in an ordinary" music distribution agreement. *Doe*, 2021 WL 1337370, at \*13-14.  SME paid advances under the contract, FAC ¶ 197; SME employees went to a recording studio to assess progress on Plaintiff's album, *id.* ¶¶ 191-192, 225; and SME employees interacted with Plaintiff during her recording of a music video and in discussions related to music production, *id.* ¶¶ 181, 250, 254, 259-260, 275, 288.  Although SME employees allegedly witnessed harassing conduct by Dream, *see, e.g.*, *id.* ¶ 225, Plaintiff does not allege that witnessing such conduct was part of the business relationship between SME and Contra.  SME certainly did not provide "active, ongoing support … tailored to" Dream's desire to harass Plaintiff.  *G.G.*, 76 F.4th at 560.  And, critically, payments by SME under the agreement predated all these interactions. A one-off contract between a music company and a production company is not a "direct, prolonged … contractual relationship" supporting trafficking, even if (unlike here) the more lenient standard for participation applies and the defendant should have known that its counterparty was engaged in criminal trafficking.  *Id.* at 561.  Participation under § 1595 requires "more than … 'mere passive nonfeasance or an 'arm's length, passive, and largely indifferent' relationship with the criminal," *G.G.*, 76 F.4th at 563-64, and "observing something is not the same as participating in it," *Doe #1*, 21 F.4th at 727.

### 3.    No Plausible Allegations of Any Benefit to SME

Plaintiff admits (Opp. 21-23) that SME received no monetary benefit from the SME/Contra contract, and lost hundreds of thousands of dollars and the time and effort of its employees, while receiving none of the music Contra promised to provide.  FAC ¶ 288.

Plaintiff's argument (Opp. 22) that SME *might* have profited from Plaintiff's

14

services had the contract gone forward—in other words, an *attempted* benefit—is legally barred. *See Ratha v. Phatthana Seafood Co.* (*Ratha I*), 35 F.4th 1159, 1176 (9th Cir. 2022); *Ratha v. Rubicon Res., LLC*, 111 F.4th 946, 969 (9th Cir. 2024) (recent amendment to § 1595 to add "attempt" to benefit applies prospectively only). An expectation that a contract *might* lead to a profit fails under the version of § 1595 in place at the time of the alleged conduct. And this argument conflicts with Plaintiff's knowledge argument, as if SME had "attempted to benefit" from the contract, it could not have simultaneously known Dream was engaged in a fraudulent scheme that would never lead to any music delivered.

Nor does "benefit" mean *non-monetary* benefit, as it refers to anything "of value," 18 U.S.C. § 1595(a), and "benefit" and "value" both require a positive gain. *See* Black's Law Dictionary, *Benefit* (8th ed. 2004) ("[a]dvantage, privilege" or "profit or gain, esp. the consideration that moves to the promisee"); *id.*, *Value* ("[t]he monetary worth or price of something; the amount of goods, services, or money that something will command in an exchange"). Plaintiff's attempt to contort these terms to encompass outcomes where the beneficiary defendant *does not benefit financially at all* should be rejected.

Plaintiff's speculation that SME might benefit from associating with Dream because he had a close relationship with Beyoncé makes no sense. Beyoncé was already signed to SME, so any claimed benefit relating to her "was already received" apart from any venture. *Roberts v. eXp Realty, LLC*, 2024 WL 3005892, at *5 (C.D. Cal. May 23, 2024). And it makes no sense that SME would forfeit its entire investment in Plaintiff—made at a time when it had no knowledge of anything now alleged to be trafficking—because Beyoncé somehow would want SME to support Dream's sex trafficking of Plaintiff. Opp. 22 (citing FAC ¶¶ 187, 310). This absurd theory is not even supported by any facts alleged in the complaint, nor does Plaintiff allege that the SME/Contra contract enhanced SME's relationship with Beyoncé in any way, or that Beyoncé was not still signed to SME after it ended its relationship with Contra. Plaintiff's benefit allegations fail as a matter of law.

### III.    CONCLUSION

The Court should dismiss Plaintiff's claim against SME with prejudice.

1    Dated:  January 15, 2025              GIBSON, DUNN & CRUTCHER LLP

2

3                                          By: */s/ Kristin A. Linsley*

4                                              Kristin A. Linsley

5                                          Attorney for Defendant
                                           Sony Music Entertainment

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY ISO MOTION BY DEFENDANT SONY TO DISMISS COMPLAINT, CASE NO. 2:24-CV-04639-SPG

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Sony Music Entertainment, certifies that this brief is 15 pages or less, as required by this Court's Standing Order dated January 10, 2025.

Dated:  January 15, 2025                    GIBSON, DUNN & CRUTCHER LLP

                                            By: */s/ Kristin A. Linsley*
                                                Kristin A. Linsley

                                            Attorney for Defendant
                                            Sony Music Entertainment

REPLY ISO MOTION BY DEFENDANT SONY TO DISMISS COMPLAINT, CASE NO. 2:24-CV-04639-SPG